IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| CITY OF EL PASO, TEXAS, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-07-CV-380-KC |
| | § | |
| EL PASO ENTERTAINMENT, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Plaintiff brings the above-captioned civil action against Defendants seeking declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, that Plaintiff may enforce Ordinance 016624 against Defendants without incurring liability. Plaintiff, however, is "enjoined from the enforcement of any adult business ordinances against" Defendants pursuant to an Agreed Judgment and Permanent Injunction ("Agreed Judgment"), signed on April 17, 1995. Plaintiff, therefore, may enforce Ordinance 016624 against Defendants if the Agreed Judgment ceases to apply. By its own terms, the Agreed Judgment protects Defendants only so long as Foxy's Nightclub ("Foxy's") and Lamplighter Lounge ("Lamplighter") "remain in operation . . . by their current owners and operators" as of April 17, 1995.

On May 5, 2009, the Court granted Plaintiff's motion for summary judgment, finding that under the terms of the Agreed Judgment, ownership of Foxy's and Lamplighter had changed since ownership of their corporate parents, El Paso Entertainment, Inc., and Jejdo, Inc., had changed. On appeal, the Fifth Circuit reversed this Court's judgment, holding that the Agreed Judgment is ambiguous with respect to the terms "owners and operators." *City of El Paso, Tex.*

1

*v. El Paso Entm't, Inc.*, 382 F. App'x 361, 368 (5th Cir. 2010). As a result, the Fifth Circuit remanded the case so that this Court may conduct a hearing in which the parties could present extrinsic evidence on the meaning of "owners and operators" as used in the Agreed Judgment. *Id.* at 368-69. Accordingly, on December 17, 2010, the Court held a hearing in which the parties presented extrinsic evidence regarding the meaning of the terms "owners and operators." Having reviewed the evidence on the record, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

## I.    FINDINGS OF FACT

The Court adopts the following facts:

1.  The City of El Paso ("City"), beginning in 1978, adopted a series of six adult business zoning ordinances aimed at regulating the location of adult businesses. Pl.'s Section A Trial Preparation Order Compliance ("Pl.'s Section A") ¶¶ 1.1, 2.11 (Stipulation), ECF No. 124-1; Hearing Tr. ("Transcript") 89:9-23.

2.  In February 1987, the City adopted the fifth of these ordinances, Ordinance 8926, which amended its regulation on the location of adult businesses through § 20.08.080(A): "No adult bookstore, adult motion picture theater or nude entertainment club may be established within one thousand feet of" specified land uses. Tr. 89:9-23, 124:25-125:20.

3.  In 1988, the City adopted Ordinance 9326, which provided for the amortization and discontinuation of nonconforming adult businesses by a certain date. Pl.'s

---

[1] To the extent that any finding of fact is more aptly characterized as a conclusion of law, or any conclusion of law is more aptly characterized as a finding of fact, the Court adopts it as such.

Ex. 1. Ordinance 9326 amended § 20.08.080 of the City Code to prohibit any person from "own[ing], operat[ing], or conduct[ing] any business in an adult bookstore, adult motion picture theater or nude live entertainment club that is located within one thousand feet of" specified land uses. Pl.'s Ex. 1.

4. Ordinance 9326 defined who could be held liable for violations of the ordinance: "Operator: The manager or other natural person principally in charge of an adult business regulated in this section. Owner or Owners: The proprietor if a sole proprietorship, all partners (general and limited) if a partnership, or all officers, directors and persons holding ten percent (10%) of the outstanding shares if a corporation." Pl.'s Section A ¶ 1.3 (Stipulation); Tr. 38:14-39:9.

5. The amendment of § 20.08.080 by Ordinance 9326 resulted in substantial litigation between adult business owners, including Marc Diedrich ("Diedrich") as owner of the Lamplighter and Red Flame, two adult businesses, and the City. Tr. 145:11-15, 157:25-158:7; *see also Woodall v. City of El Paso*, 950 F.2d 255 (5th Cir. 1992); *Woodall v. City of El Paso*, 959 F.2d 1305 (5th Cir. 1992); *Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir. 1995).

6. Diedrich owned all the shares of El Paso Entertainment, Inc. ("El Paso Entertainment"), the company that owned Foxy's, and all the shares of Jedjo, Inc. ("Jedjo"), the company that owns Lamplighter. Pl.'s Exs. 8-9.

7. In this litigation, the City was involved with Deidrich, as well as other individual adult business owners, such as Phyllis Woodall and Jeannie Coutta. Tr. 35:11-15, 157:25-158:7.

8. After a second remand of the *Woodall* case from the Fifth Circuit to the district court, the case was tried to the district court, which resulted in a 1993 injunction against the City's adult business zoning regulations, including § 20.08.080. That decision was appealed to the Fifth Circuit. Pl.'s Ex. 3 at 3-5; Tr. 42:25-43:25.

9. In 1994, while the 1993 *Woodall* judgment was on appeal, Diedrich was operating two adult businesses in El Paso: Lamplighter and the Red Flame, both of which were involved in the *Woodall* litigation. *Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir. 1995); Tr. 145:11-15, 157:25-158:7.

10. At that time, Diedrich applied for a certificate of occupancy on behalf of a new adult business, Foxy's, but the certificate of occupancy was denied on the basis of the City's adult business zoning regulations. Tr. 34:14-22.

11. Diedrich retained attorney Gilbert H. Levy ("Levy") to prosecute a lawsuit on behalf of Foxy's through its corporate entity, El Paso Entertainment, against the City for the City's denial of a certificate of occupancy. Tr. 37:3-15, 149:24-150:8. The 1994 case was an action under 42 U.S.C. § 1983 to remedy alleged constitutional violations caused by the City's adult business zoning ordinances. Tr. 37:3-15; Pl.'s Ex. 2.

12. Laura Gordon ("Gordon") was the Assistant City Attorney in charge of the Foxy's litigation. Tr. 33:24-34:12.

13. Foxy's First Amended Complaint contained five claims, all concerning the adult business restrictions in the City's zoning code, which is Title 20 of the City Code. Pl.'s Ex. 2 at 4-8.

14. Specifically, the lawsuit challenged § 20.08.080, stating: "The applicable sections of the City of El Paso's adult entertainment zoning ordinance, including but not limited to El Paso Municipal Code § 20.08.080, which form the basis of the Defendant's refusal to issue a certificate of occupancy to the Plaintiff, on their face and as applied to the Plaintiff violate rights afforded by the First and Fourteenth Amendments to the United States Constitution." Pl.'s Ex. 2 ¶ 16; Pl.'s Section A ¶ 1.5 (Stipulation).

15. At this Court's hearing on December 17, 2010, Diedrich stated that his 1994 lawsuit against the City was focused on the rule in § 20.08.080(A) that prohibited him from operating an adult business at the Foxy's location. Tr. 159:4-160:8.

16. During the 1993-94 period, Diedrich was the sole owner and operator of Foxy's and Lamplighter. Tr. 157:5-24.

17. In February 1995, the Court, based on the *Woodall* judgment that was on appeal to the Fifth Circuit, granted El Paso Entertainment, doing business as Foxy's, partial summary judgment, ruling that the City's adult business zoning restrictions, including § 20.08.080, were unconstitutional and enjoining the same. Pl.'s Ex. 3 at 2, 6; Pl.'s Section A ¶ 1.6 (Stipulation).

18. Thereafter, Gordon and Levy negotiated the Agreed Judgment to resolve the Foxy's litigation. Tr. 44:14-21.

19. Due to the *Woodall* case and her involvement in the El Paso Entertainment case, Gordon was aware that Diedrich was the owner/operator of Lamplighter and Foxy's. Tr. 141:20-25.

20. CR&R is the landlord to Foxy's and Lamplighter. Tr. 173:3-22.

21. Robert Levine ("Levine") is the corporate attorney for CR&R, Inc. ("CR&R"), El Paso Entertainment, and Jedjo. Tr. 175:15-176:12. Levine did not participate in these settlement discussions. Tr. 179:9-14, 194:2-8.

22. In his correspondence with Gordon, Levy copied only Diedrich; not Levine, or any other entities or individuals. Pl.'s Exs. 23-25.

23. To resolve a lawsuit, attorneys for the City must first discuss any settlement proposal with the City Council. Tr. 48:23-49:2.

24. In a letter from Gordon to Levy sent March 14, 1995, Gordon indicated that she believed the City Council would approve a settlement that involved a $15,000 payment to El Paso Entertainment and grandfathering of both Foxy's and Lamplighter as nonconforming uses, which would allow Foxy's and Lamplighter to remain in operation at their locations. Tr. 49:3-13.

25. In a letter to Levy dated March 20, 1995, Gordon reiterated that the City Council would have to approve any settlement of the lawsuit and that the settlement proposal would be on the agenda for discussion and action by the City Council on March 21, 1995. Pl.'s Ex. 19.

26. On March 21, 1995, Gordon discussed the settlement proposal and authority to settle the lawsuit with the City Council. Tr. 50:15-20.

27. Gordon explained to the City Council in executive session that the proposed settlement originally requested grandfathering for three nightclubs (Lamplighter, Foxy's, and the Red Flame), but she was able to exclude Red Flame from the

agreement. Pl.'s Ex. G.

28. When Gordon discussed the proposed settlement with the City Council, the City Council expressed concern about any future changes in the owners or operators of the businesses. Tr. 59:13-23.

29. While the City Council was agreeable to paying some money and allowing Foxy's and Lamplighter to continue in operation, the City Council was concerned about any future changes in the owners or operators of the businesses. Tr. 59:13-23.

30. The City's concern about ownership changes included concern about the individuals and natural persons who operated Foxy's and Lamplighter, as the City had previously been in litigation with Diedrich and others over adult business zoning ordinances. Tr. 59:24-60:10.

31. The City was also concerned about making sure the Agreed Judgment protected only the individuals, businesses, clubs, owners, and operators running Foxy's and Lamplighter at that time. Tr. 61:12-17.

32. On March 21, 1995, the City Council approved the settlement of the El Paso Entertainment lawsuit, granting authority to pay $15,000 and to recognize the grandfathering of Foxy's and Lamplighter as nonconforming uses. Tr. 60:11-21.

33. That same day, Gordon wrote a letter to Levy stating that the City Council "approved a payment of $15,000.00 and the grandfathering of the Lamplighter and Foxy's Clubs as legal non conforming uses." Pl.'s Ex. 20.

34. The City Council did not give Gordon authority to give anything additional to the clubs in the settlement other than the payment of $15,000 and the grandfathering

of Foxy's and Lamplighter. Tr. 60:22-25, 129:22-130:8.

35. Gordon and Levy discussed the City's willingness to grant nonconforming use status to Foxy's and Lamplighter, but only on the condition that if any change occurred, including a change in ownership, it would end the grandfathering protection. Tr. 61:24-62:14.

36. Although the City was not familiar with El Paso Entertainment's business structure, it knew that Diedrich was the interested individual behind the El Paso Entertainment lawsuit. Tr. 62:7-18.

37. On April 17, 1995, this Court entered the Agreed Judgment prepared by Levy and Gordon. Pl.'s Ex. 4.

38. The first paragraph of the Agreed Judgment states that the parties entered into an agreement "to dispose of the merits of the lawsuit." Pl.'s Ex. 4 at 1.

39. In the second paragraph, the Agreed Judgment states "that this case involves a dispute over application of certain provisions of the El Paso Municipal Code which regulate the operation of the Adult Businesses within the City limits," specifically, that El Paso Entertainment maintained that the "City's adult business zoning restrictions" violate its constitutional rights and that the City was collaterally estopped by a prior court decision (*Woodall*) from asserting the constitutionality of "its adult business zoning restrictions." *Id.* at 1-2.

40. The Agreed Judgment states, in significant part, "The clubs known as Foxy's Nightclub and Lamplighter Lounge shall be recognized as legal, non-conforming uses and shall be permanently grandfathered as such, for such period of time as

the businesses remain in operation at their current locations by their current owners and operators." It further states, "Thus, the phrase 'remain in operation' as set forth above means that CR&R, Inc., will continuously maintain its ownership or leasehold interest in the subject properties and that the businesses shall remain open for business as adult businesses subject to the provisions of Chapter 20.62 allowing for temporary closure for a short period of time." Pl.'s Ex. 4 at 2-3.

41. Gordon understood the term "owners and operators" to mean individuals and natural persons, consistent with the definition of owners and operators contained in Ordinance 9326. Tr. 128:5-20. The City Council had the same understanding of the term "owners and operators." Tr. 128:5-20.

42. On April 17, 1995, Diedrich was the sole owner and operator of Foxy's and Lamplighter. Tr. 157:5-24. He also owned all the shares of El Paso Entertainment and Jedjo. Pl.'s Exs. 8-9.

43. In 1996, Dean Reiber bought all the shares of El Paso Entertainment and Jedjo from Diedrich. Pl.'s Exs. 8-9.

44. Dean Reiber had no involvement in the lawsuit or negotiations that culminated in the Agreed Judgment. Pl.'s Section A ¶ 1.28 (Stipulation).

45. Diedrich has not been involved in the businesses since September 1996. *Id.* ¶ 1.30 (Stipulation).

46. While CR&R has been the landlord to Foxy's and Lamplighter, it has not and is not the owner of El Paso Entertainment or Jedjo. Tr. 173:3-22.

47. The City filed this action for declaratory judgment seeking a declaration that the Agreed Judgment no longer protects Foxy's and Lamplighter from enforcement of adult business ordinances. Pl.'s 1st Am. Compl. ¶ 1.

## II. CONCLUSIONS OF LAW

In light of the foregoing findings, the Court makes the following conclusions of law.

### A. Governing Law

Consent decrees[2] have elements of both contracts and judicial decrees. *Frew ex. rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Firefighters v. Cleveland*, 478 U.S. 501, 519 (1986)). "A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'" *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992)). Because a consent decree, "by virtue of

---

[2] Although in the instant case the legal document at issue is titled an Agreed Judgment, and not a consent decree, it is important to note that neither party attempts to distinguish between the Agreed Judgment and consent decrees. Rather, all parties cite precedent concerning consent decrees to advance their positions regarding the Agreed Judgment. *See* Pl.'s Section A at 29-33; Defs.' Updated Proposed Findings of Fact & Conclusions of Law 20-21, ECF No. 146. Furthermore, agreed judgments appear to be functionally equivalent to consent decrees. In this Court's Order granting summary judgment, the Court stated, "[t]he Agreed Judgment is essentially a consent decree. *See Black's Law Dictionary* 441 (8th ed. 2004) (defining a consent decree as '[a] court decree that all parties agree to')." Order, May 11, 2009, ECF No. 95. *See also Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252-53 (11th Cir. 2008) (court applied tenets of construction for consent decrees to agreed judgment at issue); *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1496 (5th Cir. 1992) (holding there is no distinction between agreed judgments and consent decrees for the purposes of collateral estoppel); *Jackson/Charvel, Inc. v. Gibson Guitar Corp.*, 863 F.2d 48 (6th Cir. 1988) (unpublished table decision) (using terms "agreed judgment," "consent decree," and "consent order" interchangeably and applying the same principles to all three). Therefore, the terms "agreed judgment," "consent decree," and "consent order" are used interchangeably in this order.

its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny." *United States v. City of Miami, Fla.*, 644 F.2d 435, 441 (5th Cir. 1981) (per curiam) (en banc) (Rubin, J., concurring). Interpretation of a consent decree is a question of law for the court. *See City of El Paso*, 382 F. App'x at 367 (citing *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998)).

Agreed judgments are interpreted as contracts by applying principles of contract interpretation. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 233, 238 (1975); *Lelsz v. Kavanagh*, 824 F.2d 372, 373 (5th Cir. 1987); *Robinson v. Vollert*, 602 F.2d 87, 92 (5th Cir. 1979). "Reference to extrinsic evidence, such as the circumstances of formation, is permissible only if the order is ambiguous in some respect." *Robinson*, 602 F.2d at 92. "A decree is ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction." *Dean v. City of Shreveport*, 438 F.3d 448, 460-61 (5th Cir. 2006) (internal quotation omitted). Examples of extrinsic evidence include preliminary drafts of the agreement and correspondence between parties during negotiation. *Dean*, 438 F.3d at 461. However, the Court must "'examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.'" *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) (quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004)).

**B.  Analysis**

Defendants claim that the Agreed Judgment remains in effect so long as CR&R continued to own the property where Lamplighter is located and lease the property where Foxy's is located. Defs.' Updated Proposed Findings of Fact and Conclusions of Law ¶ 59. Defendants also argue

11

that owners and operators means corporations, not individuals, and that therefore the owners and operators have not changed since the signing of the Agreed Judgment. *See* Tr. 12:12-15. The City, on the other hand, contends that the Agreed Judgment protected Defendants only until the natural persons who owned and operated Foxy's and Lamplighter on April 17, 1995, changed. Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 51, ECF No. 145.

1. **Defendants' interpretation untenable**

The Defendants' interpretation of the Agreed Judgment, that they would continue to be protected so long as CR&R maintained its ownership and leasehold interests in the subject properties on which Foxy's and Lamplighter were located, is untenable.

CR&R cannot possibly be grandfathered into the Agreed Judgment. The text of the Agreed Judgment precludes such an interpretation. The Agreed Judgment states that "[t]he clubs known as Foxy's Nightclub and Lamplighter Lounge . . . shall be permanently grandfathered." Pl.'s Ex. 4 at 2. The only entities explicitly stated as being grandfathered are Foxy's and Lamplighter, not CR&R. The next sentence indicates "[t]hese businesses shall retain their status as a non-conforming use." *Id.* at 3. "These businesses" are the businesses listed in the preceding sentence, Foxy's and Lamplighter; in fact, there is no prior mention of CR&R in the Agreed Judgment. In next paragraph, the "parties agree that the businesses in question may be considered a non-conforming use." *Id.* Therefore, the plain text of the Agreed Judgment grandfathers as protected and bestows non-conforming use status upon Foxy's and Lamplighter, not CR&R.

As Defendants argue, the Agreed Judgment identifies CR&R as "the third-party beneficiary of this settlement agreement." *Id.* Furthermore, Foxy's and Lamplighter are recognized as legal, non-conforming uses so long as the businesses "remain in operation." *Id.*

The Agreed Judgment defines "remain in operation" to mean "that CR&R, Inc., will continuously maintain its ownership or leasehold interest in the subject properties." *Id.* However, notwithstanding Defendants' contention, this language does not mean CR&R is grandfathered for protection from enforcement of adult business ordinances as are Foxy's and Lamplighter. To read CR&R as enjoying grandfathered protection changes the plain meaning of the Agreed Judgment, since, as discussed above, the Agreed Judgment explicitly confers non-conforming use status only to Foxy's and Lamplighter, not CR&R.

The Agreed Judgment defines "remain in operation" not just to mean that CR&R maintains its ownership or leasehold interest, but also "that the businesses shall remain open for business as adult businesses." Pl.'s Ex. 4 at 3. Once again, "businesses" is defined earlier in the paragraph to mean Foxy's and Lamplighter, and Foxy's and Lamplighter enjoy protection "for such period of time as the businesses remain in operation at their current locations by their current owners and operators." *Id.* Hence, by its own terms, the Agreed Judgment controls so long as CR&R maintains its ownership or leasehold interest, and Foxy's and Lamplighter remain open for business as adult businesses at their current locations by their current owners and operators. The language naming CR&R as a third-party beneficiary means that CR&R enjoys protection from liability for any violations of the City's adult business zoning ordinances, protection derivative from Foxy's and Lamplighter's status as legal, non-conforming uses.

Furthermore, there is no evidence that the parties intended for CR&R to be grandfathered into the Agreed Judgment. While Diedrich testified that he thought CR&R was grandfathered for protection, he also admitted that he never told anyone that he wanted CR&R to be a part of the Agreed Judgment so that he could later sell his interests in Jedjo and El Paso Entertainment. Tr. 166:19-167:15. In addition, Gordon and Levy discussed non-conforming use rights for Foxy's

13

and Lamplighter, but not CR&R. Tr. 62:7-18. Finally, in the numerous letters Levy wrote to Gordon, Levy sought a "settlement to assure the non-conforming use rights of the Lamp Lighter and Foxy's," but not CR&R. Pl.'s Ex. 15-16. The Court's interpretation of the Agreed Judgment stated above is consistent with the text and the parties' intent, and renders Defendants' interpretation untenable.

### 2. Parties' intent

The parties' intent, as evidenced by the extrinsic evidence presented at the hearing on December 17, 2010, indicates that "owners and operators," as those terms are used in the Agreed Judgment, means individuals and natural persons. The surrounding circumstances leading up to the Agreed Judgment are informative. In 1978, the City adopted a series of six adult business zoning ordinances intending to regulate the location of adult businesses. Tr. 89:9-23. Consistent with the intent to regulate adult businesses, the City sought to negotiate the narrowest possible protection of adult businesses in the 1995 Agreed Judgment. In fact, Gordon explained to the City Council in executive session that despite the fact that the proposed settlement originally requested grandfathering for three nightclubs, Foxy's, Lamplighter, and the Red Flame, she was able to exclude the Red Flame from the Agreed Judgment. Pl.'s Ex. G. Accordingly, the Court finds it difficult to believe that the City intended for the Agreed Judgment to remain in effect for potentially infinite duration by grandfathering CR&R; in fact, the Court finds that CR&R was not grandfathered for the reasons set forth above.

Similarly, the Court does not believe that the City would negotiate an Agreed Judgment of essentially perpetual duration that would remain in effect so long as El Paso Entertainment owned and operated Foxy's and Jedjo owned and operated Lamplighter. Such an agreement contravenes the City's overarching intent to regulate adult businesses that animated its desire to

14

negotiate the narrowest possible settlement in 1995. Additionally, the Court sees no reason why Defendants would believe the City would negotiate a settlement in direct opposition to its goals both of regulating adult businesses and in achieving a settlement offering the narrowest protection possible.

Furthermore, the parties and the lawyers representing the parties in this litigation reveal that the parties intended "owners and operators" to mean natural persons. Diedrich, as owner and operator of Foxy's, originally hired Levy to prosecute a lawsuit on behalf of Foxy's against the City for the City's denial of a certificate of occupancy. Tr. 34:14-22, 37:3-15, 149:24-150:8. While Levy prosecuted the lawsuit on behalf of Foxy's through its corporate entity, El Paso Entertainment, Levy primarily represented and was hired by Diedrich in his capacity as owner of Foxy's. Levy negotiated the Agreed Judgment with Gordon; Levine, the corporate attorney for CR&R, El Paso Entertainment, and Jedjo, did not participate in settlement discussions. Tr. 179:9-14, 194:2-8. That Levy participated in settlement discussions instead of, and with no involvement from, corporate counsel for El Paso Entertainment and Jedjo further supports the fact that "owners and operators" means individual owners and operators, not corporate. Diedrich, as individual owner of the adult businesses in question, sought to continue business at Foxy's and avoid closure; in this vein, he hired Levy to prosecute the lawsuit against the City. In fact, in all of the correspondence between Levy and Gordon, Levy copied only Diedrich, not Levine, or any other entities or individuals. Pl.'s Exs. 23-25.

In sum, this Court concludes that the parties intended for "owners and operators" as used in the Agreed Judgment to mean individuals and natural persons. *See In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981) (examining extrinsic evidence to determine parties' intent where ambiguity existed in consent decree).

15

### 3. Applicability of Agreed Judgment

On April 17, 1995, Diedrich was the sole owner and operator of Foxy's and Lamplighter, Tr. 157:5-24, and also owned all the shares of El Paso Entertainment and Jedjo. Pl.'s Exs. 8-9. In 1996, Dean Reiber purchased all the shares of El Paso Entertainment and Jedjo from Diedrich. *Id.* Since "owners and operators" means natural persons, the owners and operators of Foxy's and Lamplighter have changed since the signing of the Agreed Judgment. Whereas Diedrich was the owner and operator in 1995, Reiber has now assumed those positions. Because the Agreed Judgment was applicable only so long as Foxy's and Lamplighter remained in operation by their "current owners and operators," the Court finds that the Agreed Judgment is no longer in effect.

Accordingly, the Court hereby **ENTERS** the following declaratory judgment in favor of the City: Foxy's and Lamplighter no longer have a legal, non-conforming use at their present locations, and the Agreed Judgment no longer precludes the City from enforcing any adult business zoning ordinances, including Ordinance 016624, against Foxy's and Lamplighter.

## III. CONCLUSION

Based upon the findings of fact and conclusions of law stated above, the Court finds that the City is entitled to judgment in its favor. The Court will enter judgment by separate document, pursuant to Federal Rule of Civil Procedure 58, in favor of the City.

**SO ORDERED**.

**SIGNED** on this 11th day of May, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE